Good morning, Your Honors. May it please the Court. I am Sam Stanky, the attorney for Plaintiff Carla Sammons, an appellant in this matter, and I would like to reserve two minutes for rebuttal. The District Court's ruling here should be reversed because it interpreted the ambiguous, undefined terms beneficial effects and beneficial, these terms that have no precise nor generally accepted definition. The Court interpreted these as limited to long-term beneficial effects. Now, an ordinary reader of this plan would not recognize this limitation in the terms beneficial and beneficial effects. The District Court incorrectly construed this ambiguity in favor of the insurer, Regence, instead of the insured, my client, Ms. Sammons, and that violated the rule of contra proferentum. Since the plan could be reasonably interpreted to cover a surgery, total disc replacement, I'll say TDR for shorthand purposes here. To cover TDR, it could have been reasonably interpreted to cover TDR because the evidence that the scientific evidence that my client submitted shows that the TDR is more, has more beneficial effects and no harmful effects than at 24 months. Kennedy, it seems to me that the primary question here is whether or not the plaintiff is right. All that, what you're talking about, beneficial effect, you know, efficacy has been shown five years out. Isn't that the question, the five years out? According to defendant Regence, that Regence's only scientific evidence supporting that five-year requirement is an unsupported statement that it submitted, citing, citing articles and scientific evidence that it chose to omit from the record. So, therefore, on de novo review, the District Court should not have deferred to Regence's unsupported opinion that it needs to be shown at five years, instead it should have looked at the scientific evidence that was in the record before it, which the District Court So where is your position that evidence of efficacy two years out is all that the plan requires? Yes. That meets, that's beneficial according to an ordinary person's understanding of the word beneficial. The plan does not define the term beneficial. It, so an ordinary person wouldn't interpret beneficial to be limited to a minimum time frame. Do you think, do you think that in fact beneficial needs to be given some texture by medical and scientific foundation? Yes, and it does here. We have Then, then aren't we in a situation of, that it's not so much the plan interpretation but it's the factual development that has been directed by the plan and that's been Well, I, we don't take issue with the District Court's finding that the TDR procedure is at least as beneficial as the alternative at 24 months. We take issue with the, with the Court's decision that that wasn't good enough to, that was not beneficial enough to meet the plan language to take it out of the investigational exclusion. But isn't, it is a semantic issue, you know, how beneficial does it need to be? I mean, you say two years is good enough. I mean, what if the evidence was six months out looked pretty good. Is that enough? Under the plain language of the plan, yes. A day, a day, is a day enough? Let's say, let's give a month because you got to recover a little bit. Probably you wouldn't have a peer-reviewed randomized study that only had results at one day. I said a month. Or a month. But if it did, if there was scientific evidence as defined by the plan that is randomized, you know, published in a peer-reviewed journal, and it said that, yeah, there were beneficial effects, then that would meet the plan's language because the plan's use of the language beneficial is ambiguous. It's undefined. So we have to go with what an ordinary reader of the plan would recognize. An ordinary reader of the plan would not assume that you need at least five years of results for TDR. They would say, oh, it shows beneficial effects at 24 months. That's beneficial. What is our standard of review when we review the reasonableness of the administrator's interpretation of the plan? De novo. The parties agreed that this is, this case is well, no, our review, well, yeah, I guess that's, I guess that's right. Yes. Yeah. Yeah. The parties stipulated at district court that de novo review, and that's our argument is the district court de facto conducted an abuse of discretion or arbitrary and capricious review. There were two deferential to the unsupported opinions submitted by regents. Regents submitted opinions, reports by an independent review board, and they cite articles that are omitted from the record. Regents did not submit those. So on de novo review, the district court should have given more weight to the actual scientific evidence, which it found showed beneficial effects at 24 months and should have given that much more weight, as well as the info from my client's treating physician. I want to just make sure I understand. Your argument is that this investigational exclusion is ambiguous. Some of the language in it is. Well, no, just tell me some of the, it's, it's, your, your argument is that it's ambiguous. Yes. And that ambiguity should be construed in favor of my client, not the insurer. Right. Because there are reasonable interpretations. Correct. They're all competing or interpretations that would be reasonable, whether it's 2 years, 5 years or 6 months. Right. Right. In which language, just to be clear what we're talking about, can you tell us a specific language that you view as ambiguous? Yeah. If we, yes, Your Honor, if we look at the definitions page. We're looking at the plan? Yes. We're looking at the plan. I'll give you the number. Sam-EX1. About the middle of the page? About the middle of the page. Investigational. Yes. Investigational means a health intervention. We have classified it as investigational. We will review scientific evidence. Now, that's important because you jump to the next page where scientific evidence is defined as scientific studies published in or accepted for publication by medical journals that meet nationally recognized requirements for scientific manuscripts and that submit most of their published articles for review by experts or finding studies or research conducted, et cetera, et cetera. So, but the investigational definition says they'll look at scientific evidence as well as information from the treating physician. My client submitted both on her appeals with Regents and the district court correctly found that those, that evidence showed that the TDR procedure was. Is there any, so as I understand it, if you read the definitions of scientific evidence or health intervention or health outcome, there's no time that is five years, 10 years, it's not here. It's ambiguous. So it's ambiguous as to that. Isn't that your, is that your argument? That's how I understood your argument. Yes, it is. And I would say specifically the terms beneficial as used in an investigational and health outcomes definitions, beneficial and beneficial effects are undefined and ambiguous. An ordinary person would assume, would interpret scientific evidence that a TDR is at least as beneficial at 24 months. That's beneficial under the plan. The plan doesn't say there's any kind of minimum time frame that the benefits must be shown over. Here we have benefits shown at 24 months. That suffices to take it out of the investigational exclusion. But, so your, the other side says, well, scientific evidence obviously means long term, because that's the only way you can evaluate the effects. Well, the definition of scientific. And that is unambiguous, and therefore here the district court said five years and that's good enough. Well, if you look at the definition of scientific evidence in the plan, it does not say long-term. It says published in or accepted for publication by medical journals. No, I mean, just, you know, universally speaking, scientific, what does a scientific study usually mean? It usually means, you know, a long-term kind of study. And we've got scientific studies that deem 24 months long-term enough to publish these results. Well, you see, but going back to the, I guess we call the definition investigation, investigational, the second to the last bullet point says scientific, scientific evidence must show that the health intervention is as beneficial as any established alternative. Yes. As I understand the argument of regents, so under that definition, they could require showing that because the established alternatives, you know, last five to 10 years or more, that you have to show it's going to be beneficial five years from the time of the operation, which you have not shown. Isn't that their argument? I'm not asking whether you agree with it. Isn't that their argument? Well, I think, yeah, their argument is that beneficial should be interpreted to mean long-term results. Long-term only because that's what established alternatives have shown, that they're beneficial, you know, five to 10 years out. Well, the established alternative here would be fusion, a fusion procedure. Right, it's good for five years. Well, the scientific evidence in the record shows that TDR is at least as beneficial at 24 months. Right, that's what I mean. So there's no showing that it's beneficial for five years. And that's what the established alternative is. So you haven't met the established alternative. I mean, isn't that the region's argument? Sort of. Well, sort of. So what's your response to that, that you haven't met it for five years? Well, under the plain language of the plan, which does not say anything about five years, a long-term minimum requirement. As beneficial as any established alternative. And any established alternative, you know, is the fusion, which is good for the established alternative, over five years. Well, by that logic, regions could keep kicking the can down the road indefinitely. No, it depends on what the scientific evidence shows as to the established alternative. The scientific evidence on the record shows it's as beneficial as the established alternative at 24 months. That should suffice under this plan. When you say that should, is that just a matter of, you know, arbitrary, you know, how do you get to 24 months is good enough to meet as beneficial as any established alternative? Because the plan language does not put a time period on it. So therefore, an ordinary person wouldn't read beneficial to mean it has to be shown at five years. So if it shows at 24 months... No, but see, I think you're evading, avoiding looking at the background against which you have to judge that is that the established alternative is good for five years. So if yours is only good for two years, that means you have to do it, you know, two and a half times as much. Well, the scientific evidence doesn't exactly show that. It shows that the TDR is at least as effective as the established alternative. For two years. At 24 months, it shows no harmful effects at 24 months. So therefore, it meets the health outcome language in the plan as well. Its overall beneficial effects on health must outweigh the overall harmful effects on health. Well, what you're saying is this, all this verbiage about, you know, investigational and beneficial and established alternatives, because it doesn't itself set in any time frames, which I assume would be different from procedure to procedure, that, you know, you can interpret under contra preferendum any way you want to almost. Yeah, exactly. It's ambiguous. Exactly right. And under contra preferendum, that ambiguity should result in favor of the insured to say that 24 months benefits, that's beneficial. As Judge McKeon says, suppose you show it's beneficial for one month. That's good enough, isn't it? Under your interpretation of what investigational means and what beneficial means, right? Yeah, because the plan left it ambiguous, the word beneficial. So therefore, any ambiguity should be resolved in favor of the insured, not the insurer. The district court erred by resolving that ambiguity in favor of the insurer. And I'm just getting low on time, but I'd argue that the Court should follow, do the same thing it did in the Simkins and Kunin cases, which I cited in my brief. This case is a lot like Kunin, which is a 2000 case in which it was also de novo review, and the — or no, Simkins was also de novo review. That was a 2000 case regarding tissue transplant and whether chemotherapy counts as a tissue transplant. The Court ruled that a person of average intelligence would construe the term tissue transplants not to include stem cells in chemotherapy, and that same analysis should apply in this case, which is that an average — an ordinary person of average intelligence wouldn't interpret the term beneficial to require a minimum time period. As long — they would say, oh, the scientific evidence shows more beneficial than harmful effects at 24 months. That is beneficial under this plan language. Is beneficial is ambiguous. That ambiguity should be resolved in favor of my client. So I argue that the Court should do what it did in Simkins here, which is reverse what the trial court did, and in order the trial court to enter judgment in Sammons' favor, since the — Redent's has never refuted the scientific evidence that it's at least as beneficial at 24 months. They've only said their opinion that that's not long enough. Five years is longer. But they haven't submitted any scientific evidence to support the necessity of a five-year time frame either. So therefore, I ask that the Court reverse it. I'll ask them. I think we still haven't really — we haven't determined what falls within established alternatives. That's really where it comes down to the — whoever meets the road here. So why don't we ask the Blue Clarus. Okay. I'll reserve the remainder of my time for rebuttal. Thank you, Your Honors. May it please the Court, Eric Lindenauer here today representing Regents Blue Cross Blue Shield of Oregon, the Oregon Bakers Union Trust Fund, and the trustees of that trust fund. Your Honors, Judge Simon's finding that artificial lumbar disc fell within the ERISA plan's investigational exclusion because the scientific evidence did not permit conclusions as to benefits or detriments beyond 24 months was not clearly erroneous. How did he interpret the exclusion? Well, I can't tell you besides what he wrote in his opinion, but he made — Well, did he make a finding of fact or did he make a legal conclusion as to what — how the plan should be interpreted? He made a finding of fact specifically that the benefits of spinal — Can you give us the number of that finding? Yeah. It's an excerpt of Record 15, and part of it I'm prepared to tell you, paraphrase, and part of it I have a quote on. This is in his Rule 52 findings and conclusions. Benefits of spinal surgery deteriorate over time and complications increase over time, and this is the quote. To permit conclusions concerning the effect of artificial disc replacement surgery on outcomes, the scientific evidence must address outcomes at least five years after surgery, end quote. Now, that statement is based on facts elicited in the administrative record at two places. First of all, in the medical policy that was submitted as evidence, the underlying document that — I understand what he did, but my question to you, you haven't answered yet, is how did he interpret the plan? How did he interpret the plan? Yes. As — And did he view it as ambiguous or unambiguous? What did he do? He viewed it as unambiguously including a temporal component, and if I could speak to at least my understanding of why, I'd be happy to, Your Honor, but I want to be sure I'm responding to the question. Well, if it's ambiguous, if the investigational exclusion is ambiguous in all its The terms require that you look at other definitions that are embedded that are part of the plan. Certainly. Right? Yes. Right. And if he said it's unambiguous that there must be long-term evidence of the beneficial effects, then what he did is probably correct, but I want to know how can you say that this investigational exclusion as a matter of law is unambiguous? Okay. To me, it's ambiguous as to whether or not it's long-term, short-term. Well, let me speak to that directly, Your Honor, because that's at the heart of the argument on appeal. And if it is ambiguous, your interpretation is reasonable, his interpretation is reasonable. In that instance, you give the interpretation that's most beneficial to the insurer. Don't dispute that at all. But let me go to the definition and tell you why it's not ambiguous. Okay. His argument is that it doesn't have any temporal component to it. It doesn't matter how long something lasts or if over time there are detrimental effects. But the definition absolutely includes a temporal component. Where is the definition? Which definition are we referring to now? Okay. We are talking about the definition of investigational. It is at, in his second volume of the excerpt of record at pages one through three, it's numbered SAM X one through three, and it's at the, in the administrative record at pages zero, zero, zero, seven, five through seven, seven. And what it says is the scientific evidence that I'm quoting here must permit conclusions concerning the effect of health, the health intervention on health outcomes, which include the disease process, injury or illness, length of life, ability to function and quality of life. So breaking that down, your honors, one cannot reach a meaningful conclusion on how an intervention affects a disease process without considering how long a good effect lasts or when a bad effect might occur. One cannot reach a meaningful conclusion, your honor, on how an intervention affects injury or illness without considering how long the intervention might be helpful or when it might become harmful. So are you agreeing with the plaintiff then that there is a time element involved, but the definition doesn't tell you what the time element is, so it's ambiguous? No, I'm not agreeing it's ambiguous. What I'm saying is each of these components has a temporal piece, but you can't define it. Each intervention is going to be different. In our brief, we use the example of a new test technology for casting broken bones. That intervention might only need to last a few weeks or a few months. Our example, getting away from the disc in this case was a heart valve where a person might have that for years, so you need to know how it reacts over years. Here we're talking about a disc implant. There's no dispute. Ms. Sammons was in her early 50s when the surgery occurred. So, you know, what happens over time is absolutely... So it's sort of like the condition specific? Absolutely. You can't set a fixed time period for any condition. It depends upon what you're talking about. Well, you're saying that the net health outcome obviously has to have some temporal aspect to it related to lifespan, durability, et cetera. And what kind of intervention we're talking about? Here we're talking about a disc they're putting in your back and this woman's in her early 50s. Yeah, it matters whether after five years the detriments are... What if she was 98 and they said this has a good two-year run on it? Lifespan, actually, she's lived beyond her lifespan, but she does happen to be 98. So two years would be pretty good for her. Would that matter because she's 98? I would argue not because these interventions need to be looked at in the general sense in which they would apply and disc implants are used in younger people and they need to last a longer period of time. Here the problem... But I mean, does the age of the recipient have any impact? What if she's 65 or 70 or 75? It might because the scientific evidence might ultimately say we only approve this because in that case they'll probably not outlive its benefits. So in that sense, it could matter, but not... You wouldn't apply it person by person. You'd apply it to the nature of the intervention. Here the nature of the intervention is an implant into somebody's spine and those implants... The problem here wasn't... There just wasn't scientific evidence as to whether it would be good or bad beyond a 24-month period. And again, the finding of fact by the judge, and it's supported both by the FDA, and I haven't mentioned that piece yet, as well as the authorities cited in the medical policy, you just... You don't know with a spine surgery scientifically whether it's good or bad in aggregate for at least five years. That comes from the medical policy, but does that come from the FDA, the medical policy? Well, it comes...  The medical policy, which is at the SAM X6-7, is supported by six footnotes to extrinsic authorities. And the policy notes that the FDA approvals for these artificial discs required further study. The FDA approvals were based on two-year studies, and they required longer-term studies. There is not a scrap of evidence in the record, Your Honor, to dispute the finding of fact that it takes at least five years to know one way or the other. Well, once you get down to findings of fact, then, you know, the record, you're probably correct. But my concern is at the threshold, is how do you interpret this? And is it ambiguous or is it unambiguous? It's unambiguous, and I... You say it's unambiguous in that it requires a long-term scientific study. Well, in this case... Here, the district court's decision on de novo review is factually supported because the studies show there has not yet been a long-term complete analysis of these disc intrusions. That's correct. But, Your Honor, what... But the problem that I'm having, though, is it doesn't necessarily have to be read the way you're reading it. Well, Your Honor, I would... You could read it reasonably just as the plaintiff argues. Well, Your Honor, I've got to respectfully submit, I can't read it that way. I can't read language that says you have to know how an intervention affects a disease process without that language inherently requiring consideration of whether it lasts 10 minutes, 6 months... How is a reasonable insured supposed to know? Well, the reasonable... If the insured looks at this and says, hey, this isn't investigational, this is covered. This is going to be covered. First of all, as found by the judge, there was a preauthorization request which was denied, so she was told it was investigational. So she has to accept that. She doesn't have to accept it, but she knew going into the surgery that it was... that the position of the defendants was going to be that it was excluded. She certainly is entitled to challenge that position. And did she have the benefit of the policy at that time? I would assume so, Your Honor. You know, I can't... I don't know that there's... She's never disputed that she didn't have a policy. That would have been issued by the Baker's Trust, and I assume it was. Mr. Lindenauer, let me ask Judge Paz's question in a little different way, but it's the same question, I think. Sure. Do you understand the plaintiff's contention or what the plaintiff's contention that policy is ambiguous is based on? Do you understand? Well, not... Do you understand his argument, Mr. Stanky's argument? He's shifted a little bit because now he's focusing on the word beneficial, and that word's only used in some of the, you know, three criteria that are issued. But what he's saying is, I think, that you had to spell out some time period or you had to use the word long-term effects. And I would suggest that putting in a time period when this language covers multiple types of intervention, anything from a, you know, a cast for a broken arm to a heart valve or a disc... Isn't that what makes it ambiguous because it's so general? It doesn't tell you really, you know, whether this particular procedure is... comes within the definition of an investigation or not, does it? This particular procedure, no. But there'd be, I mean, there are an infinite number of procedures that have to be evaluated based on this investigational criteria. So spelling out for each procedure... Really, isn't it really the evaluation of the scientific evidence that comes down to these factual findings here rather than interpret... You know, it's taking the use of the word scientific investigatory outcomes and then the question boils down to these factual findings, doesn't it? Exactly. You have to apply that definition in context. That definition has to apply to the whole panoply of potential procedures or supplies, all of which are defined as health interventions, you know, that an insured could conceivably ask for. So the language has to be general. But the... You know, it's true that whenever you have a new medical procedure, you know, it takes a while to see if it's going to stick, so to speak, and whether it's going to have long-term benefits. I think the question here is... There is the study with respect to two years out, correct? Correct. And so the question is, is the standard of efficacy five years? Where does that come from besides your policy? In the context of this intervention, and as found by Judge Simon and supported in the record, you don't know with a back surgery whether it's good or bad in aggregate. And we're talking about in a population. Some people are going to be good. Some people are going to be bad. But you don't know overall whether it's good or bad for at least five years, because that's how long with a back surgery the beneficial effects need to fade and the detrimental effects... That's based on scientific reviews and studies? Absolutely, Your Honor. Yeah, it's submitted in the medical policy, and it's also very consistent with what the FDA did in approving these devices, saying we are mandating longer-term studies. For lumbar discs, it was specific in saying five years. It was, you know, there was a range for cervical discs, but for lumbar discs, FDA said we want a five-year study. You know, my problem is how a reasonable, insured looking at this would understand that to be the case. Well, Your Honor, I think the language is pretty clear on its face when it says you need to have scientific evidence. Somebody in the plaintiff's position here, when she looked at this, she would have obviously understood that this disc situation was not going to be covered. Well, again, she was informed of that when she requested preauthorization. You know, scientific evidence would... Even assuming she got, you know, the notice from the plant administrators and takes their letter and looks at the plan language, she would understand that it's not covered. She would not necessarily... Here, Your Honor, I've got to go with you because... Correct. Would she know that scientific evidence is a defined term and it requires, you know, peer-reviewed studies or government authority, essentially, paraphrasing. Would an average person know what the peer-reviewed literature showed? She could have asked. I mean, there are many ways you could work to ascertain that. Would you know it just off the face of the language? No, but that is the plan definition. And under ERISA, there's no ambiguity in it. And the rule of construing language against a drafter doesn't mean that one might be, as a layperson, able to draw conclusions simply by the plan definition. Again, this required an understanding of the scientific evidence. So I have to go with you, Your Honor. Could I read this and know what the scientific evidence showed? No, but the scientific evidence is available and it's known to physicians, it's known to the FDA, it's known to... Okay. Thank you. Thank you. You have some rebuttal time. Thank you, judges. Just very quickly, the district court did make the correct factual finding that TDR is at least equivalent to the alternative fusion in the short term. That should have been sufficient under the plain plan language. Number two, this five-year requirement is not evidenced in any of the scientific evidence before the court. It's only referenced in this medical policy, which cites articles and scientific evidence that regents chose not to submit. It's only in their medical policy that they cite these six footnotes to authorities that they chose not to submit to the court. So all the district court had before him was the FDA study, which says at least is beneficial at 24 months. I can't find where in the FDA study it says we need five years of results to make a determination. No, it says 24 months is enough to show it's at least as beneficial as the alternative fusion in 24 months. The length of time is not stated in the definition. It would be very easy for regents to define beneficial or to include the term long-term before beneficial. Very easy. If they want to have, make it clear they're ensured that they need long-term beneficial evidence. So in the scientific evidence, regents have submitted none to refute the FDA article, just this medical policy, which is akin to hearsay. It's citing articles that are not in evidence before the court. The examples cited by counsel for showing bad effects of different example procedures, not — there's nothing in evidence showing that the TDR procedure has any harmful effects at 24 months or any other time. Only beneficial effects. The plan can reasonably interpret it to include those 24-month beneficial effects. So therefore, under the rule of contra preferentum, the ambiguity should be resolved in favor of my client. Yeah, that's beneficial enough. The length of time is not stated in the policy. Kind of — counsel's kind of grasping at straws, reaching for the other part of the Well, that's quite a stretch to say that means a reasonable insured should look at that and understand that to mean at least five years' worth of studies for the TDR procedure. Quite a stretch. So I think it's indisputable this language is ambiguous, and the district court erred by construing that ambiguity to favor regents instead of Ms. Sammons. Thank you. Thank both counsel for your arguments this morning. Sammons v. Regents Blue Cross is submitted. The next case for argument would be Clatsop Residence v. Walmart v. Army Corps of Engineers.
judges: Tashima, McKeown, Paez